**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| GRIF R. LIPPENCOTT, | ) | |
| | ) | Case No. |
| Plaintiff | ) | |
| v. | ) | |
| | ) | |
| INVESTIGATOR NICHOLAS LIBERIO; | ) | |
| INVESTIGATOR GREGORY KLEBBA; | ) | |
| INVESTIGATOR DAVID ZDAN; | ) | |
| INVESTIGATOR KENNETH KEATING; | ) | |
| SERGEANT ERIN GIBLER, | ) | |
| DEPUTY CHIEF of POLICE CHAD BISSEGGER,) | | |
| CATHERINE LIPPENCOTT, | ) | |
| COUNTY OF DUPAGE, | ) | |
| CITY OF NAPERVILLE | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendants. | ) | |

---

## COMPLAINT

---

NOW COMES Plaintiff, Grif Lippencott, by and through his attorney Donald J. Angelini, Jr. of Angelini & DiLeo P.C., and for his Complaint against Defendants, both jointly and severally, respectfully states as follows:

### INTRODUCTION

1. On February 17, 2023, Grif Lippencott ("Grif") was unlawfully arrested and charged by indictment with nineteen (19) felony counts of unlawful possession of a weapon (without a valid Firearm Owner's Identification ("FOID") based upon misrepresented facts and false evidence created by Catherine Lippencott ("Catherine") and the Defendants listed in this Complaint.

2. Catherine is the former wife of Grif.

3.  Prior to his arrest, Grif was a twenty-two (22) year decorated veteran of the Naperville Police Department ("NPD") and is a former United States Marine.

4.  In the course of a domestic relations proceeding (post-judgment), Catherine began to contact the Naperville Police Department and made numerous false allegations about Grif, in order to put her in an advantageous position within the domestic relations case.

5.  Based upon the false information that was relayed by Catherine, the DuPage County State's Attorney's Office wrongfully drafted a criminal complaint charging Grif with unlawful possession of a weapon with a revoked FOID card.

6.  Based upon the criminal complaint, the DuPage County's Sheriff's Office moved forward and wrongfully arrested Grif on February 17, 2023.

7.  This arrest negatively affected Grif's reputation within his chosen profession and it cost Grif his employment at the time of the arrest.  The arrest also negatively affected his chances at future employment, and destroyed any chance for Grif to reinstate his FOID card.

**PARTIES**

8.  Plaintiff Grif is a resident of DuPage County, Illinois presently and at the time of the allegations.

9.  On information and belief, Defendant Nicholas Liberio ("Liberio") is an adult resident of DuPage County, Illinois. At all times material hereto, Defendant Liberio was the Assistant Chief Investigator for the DuPage County State's Attorney's Office and was acting under the color of state law. Liberio is sued individually and in his official capacity as an investigator at the DuPage County State's Attorney's Office.

10. On information and belief, Defendant Gregory Klebba ("Klebba") is an adult resident in DuPage County, Illinois. At all times material hereto, Defendant Klebba was an investigator at the DuPage County State's Attorney Office and was acting under the color of state law. Klebba is sued

individually and in his official capacity as an investigator at the DuPage County State's Attorney's Office.

11. On information and belief, Defendant David Zdan ("Zdan") is an adult resident in DuPage County, Illinois. At all times material hereto, Defendant Zdan was the Chief Investigator for the DuPage County State's Attorney's Office and was acting under the color of state law. Zdan is sued individually and in his official capacity as an investigator at the DuPage County State's Attorney's Office.

12. On information and belief, Defendant Kenneth Keating ("Keating") is an adult resident in DuPage County, Illinois. At all times material hereto, Defendant Keating was an investigator at the DuPage County State's Attorney's Office and was acting under the color of state law. Keating is sued individually and in his official capacity as an investigator at the DuPage County State's Attorney's Office.

13. On the information and belief, Defendant Sergeant Erin Gibler ("Gibler") is an adult resident in DuPage County, Illinois. At all times material hereto, Defendant Gibler was a duly appointed Police Sergeant with the Naperville Police Department and was acting under the color of state law. Gibler is sued individually and in her official capacity as a Naperville Police Officer.

14. On the information and belief, Defendant Chad Bissegger ("Bissegger") is an adult resident in DuPage County, Illinois. At all times material hereto, Defendant Bissegger was a duly appointed Police Deputy Chief with the Naperville Police Department and was acting under the color of state law. Bissegger is sued individually and in his official capacity as a Naperville Police Officer.

15. On the information and belief, Defendant Catherine Lippencott ("Catherine") is an adult resident in DuPage County, Illinois.

16. The County of DuPage is a municipality chartered by the State of Illinois and as such is a political subdivision of the State of Illinois and among its other functions operates and maintains a law enforcement agency known as the DuPage County Sheriff's Department.

17. The City of Naperville is a municipality chartered by the State of Illinois and as such is a local public entity, and among its other functions operates and maintains a law enforcement agency known as the Naperville Police Department.

## JURISDICTION AND VENUE

18. Each and all acts of defendants were performed under the color and pretense of the Constitutions, statutes and ordinances, regulations, customs, and usages of the United States of America, the State of Illinois, the County of DuPage, and under the authority of their office as law enforcement officers for DuPage County, Illinois.

19. The incidents which give rise to this cause of action occurred within this jurisdiction and within two years of the filing of this Complaint.

20. Venue is proper in this venue pursuant to 28 U.S.C. § 1391, as all the defendants are residents of this district and/or all the acts or omissions which give rise to this cause of action occurred within this district.

21. This Court has jurisdiction over Plaintiff's claims pursuant to federal question jurisdiction, 28 U.S.C. § 1331, 28 U.S.C. § 1343(a)(3)(4) and 42 U.S.C. § 1983. Plaintiff further invokes the supplemental jurisdiction of this Court to hear and decide claims arising under state law pursuant to 28 U.S.C. § 1367.

## FACTUAL ALLEGATIONS

22. Plaintiff hereby incorporates, in their entirety, each and every paragraph contained in this Complaint and by reference makes said paragraphs a part hereof as if fully set forth herein:

23. Grif and Catherine were a married couple living in Naperville, Illinois.

24. Grif was working as a Police Officer for the Naperville Police Department.

25. Grif held various positions at the Naperville Police Department including Patrol Officer, Special Operations, Canine Unit, and SWAT.

26. In January 2012, Grif was informed by the Investigators at the Naperville Police Department that Catherine was being investigated for forgery. (NPD Case 2012-1238).

27. Grif agreed to assist the Naperville Police Department in the investigation.

28. On January 31, 2012, after receiving the news of this investigation, Grif filed a divorce proceeding in DuPage County (2012 D 000215) requesting that Grif have custody over their minor children.

29. On May 21, 2012, Grif secured an Emergency Order of Protection (2012 OP 000734) against Catherine.

30. After being served, Catherine concealed all seven (7) of their children from Grif at a relative's home.

31. On June 26, 2012, Catherine was apprehended on the outstanding felony warrant for theft.

32. Soon thereafter, Catherine encouraged her and Grif's eldest daughter to contact the Department of Children and Family Services ("DCFS") to make a false claim that Grif was an unfit father.

33. DCFS investigated Grif based on this false claim. DCFS's investigation concluded that the allegations were unfounded, and DCFS categorized the claim as a form of harassment against Grif.

34. In 2015, Grif was named Naperville Police Officer of the Year.

35. On April 1, 2015, Grif retired from Military service after serving twenty-seven (27) years in the Marine Corps and Marine Corps Reserves.

5

36. On December 7, 2017, Grif experienced a severe mental health crisis which caused Grif to be on leave from his role at the Naperville Police Department.

37. After Grif's mental health crisis, Grif was diagnosed with post-traumatic stress disorder which was intensified by a traumatic brain injury and chronic migraine headaches. These diagnoses were a direct consequence of Grif's twenty-seven (27) years of service in the Marine Corps.

38. After the mental health crisis, Grif gave up his Firearm Owner's Identification (FOID) card privileges.

39. On February 27, 2018, Grif completed a transfer of weapons request to Catherine.

40. On that same day, Catherine received a letter from the Naperville Police Department regarding the transfer and Catherine's responsibility for the safekeeping of the firearms.

41. By June 1, 2018, the Naperville Police Department placed Grif on disability. Grif then resigned from his role as a Naperville Police Officer.

42. On October 19, 2021, Catherine and Grif became engaged in a verbal altercation. Sergeant Gibler was the responding officer and Officer Keating authorized the incident report for the call (NPD Case 2021-010014).

43. On February 13, 2022, Catherine and Grif were involved in a physical altercation wherein Grif filed a police report accusing Catherine of domestic battery (NPD Case 2022-001579).

44. Catherine provided misleading and incorrect statements to the authorities during their investigation of the incident claiming that she had not physically assaulted Grif, however, she admitted in a text message to her sons that she had choked Grif out.

45. On February 18, 2022, Catherine removed their minor child from her and Grif's shared residence. Later that same day, Catherine brought the minor child to their eldest daughter's home

without informing Grif. Catherine instructed the eldest daughter that Grif was not allowed to see his minor child over that specific weekend.

46. Grif and one of his daughters got into an argument over the phone. At Catherine's request, Grif's daughter reported this argument to the Naperville Police Department. Sergeant Gibler was the officer involved in the reporting of the event. (NPD Case 2022-002477).

47. On February 20, 2022, Catherine and her son removed all the weapons from the shared residence.

48. On February 22, 2022, Grif initiated an Order of Protection (2022 OP 000203) against Catherine. Catherine filed a counter-petition against Grif.

49. On April 1, 2022, Grif moved out of the shared residence and into an apartment in Warrenville.

50. Upon information and belief, On or around April of 2022, Catherine and their son brought the guns back to the formerly shared residence and Catherine put them in the safe.

51. By January 2023, the relationship between Catherine and Grif had completely deteriorated.

52. On January 17, 2023, Grif completed his assessment with Dr. Carrie Steiner, to have his FOID card reinstated.

53. On January 19, 2023, Catherine served Grif with a Motion for the Exclusive Possession of the Shared Property documents.

54. On January 20, 2023, Catherine filed a report with the Naperville Police Department against Grif for harassment by telephone. The incident was reported as Case Number 2023-000636.

55. After speaking with the Naperville Police Department, Catherine sent a text to her son stating that she "stirred the pot today."

56. Thereafter, Grif spoke with Gibler on the phone. During the conversation with Gibler, Grif described Catherine's erratic behavior and relayed his fears about the firearms that were held at the shared residence.

57. At all times mentioned herein, Gibler knew of Catherine's prior arrest record and pattern for deceit.

58. On January 22, 2023, Grif emailed Gibler to inquire about the safety of his minor child as Catherine would no longer communicate with Grif.

59. On January 23, 2023, Grif initiated proceedings for the third time to obtain an Order of Protection against Catherine (2023 OP 000102).

60. On January 28, 2023, Dr. Carrie Steiner submitted her positive evaluation of Grif to the Illinois State Police for his FOID card to be reinstated. In Dr. Steiner's evaluation, she included that "due to [Grif's] line of work, it would be beneficial professionally for Mr. Lippencott to have his FOID card returned to him."

61. Prior to January 31, 2023, The DuPage County State's Attorney Office became involved in the investigation of Grif, based upon a referral from the City of Naperville who claimed that Grif was under a criminal investigation.

62. DuPage County State's Attorney Office Investigator Liberio authored a report, which stated that "[o]n Tuesday, February 14, 2023, at 1830 hours," he was contacted by Bissegger to assist in an on-going criminal investigation of Grif. The report includes that there have been six different Naperville Police Department reports involving Grif and Catherine. These reports are: 2023-000636; 2022-002477; 2022-002473; 2022-001579; 2021-0010014; and 2017-013608.

63. Primarily, Bissenger related to Liberio that, "Sergeant Gibler informed Kate of Grif's position and she related that she will not be returning to the residence due to her fear of Grif. Kate

added that there are numerous firearms and weapons in the house, she estimates about 17-20 guns, which are all locked in a stand up safe that **Grif changed the combination to insure he was the only having access to the firearms.** Seargent Gibler noted in her report that Grif has a revoked FOID (Firearms Owners Identification) card due to a previous incident."

64. Later on in the report, Liberio stated, "…Kate stated in 2022 she temporarily relocated all of the guns from the safe to Grif's parents' home in Naperville, but that in April 2022 she and her son, C.L., brought them back to the safe in their home. **Kate stated that sometime in 2022 Grif changed the combination to the safe to prevent her and C.L. from having access to it, even though he did not have a valid FOID**."

65. Upon information and belief, Liberio relied upon false statements that he absolutely knew to be false when creating the report which ultimately formed the basis of Grif's arrest.

66. Upon information and belief, Liberio failed to adhere to established law enforcement standards and investigatory protocols when handling Catherine's case. Specifically, Liberio neglected to ask Catherine clarifying questions when investigating her claim that Grif had changed the code to the gun safe especially in light of the timing of Catherine's removal of the guns from the once shared residence, including the timing of when Grif moved out of the residence on a permanent basis, etc.

67. No factual basis existed to support a finding of probable cause that Grif had access to the firearms or the guns.   Notwithstanding, Liberio manipulated evidence and relied upon fabricated evidence in order to claim that there was sufficient evidence of probable cause to justify an arrest or issue a search warrant for Grif.

68. Throughout the process, Liberio worked with the Illinois State Police to deny Grif the reinstatement of his FOID application.

69. On February 8, 2023, Catherine met with Sergeant Gibler in order for her phone to be taken into evidence. During that interaction, Catherine had shared that she hoped that Grif was locked up and that she would never see him again.

70. At 6:15 PM, Gibler brought Catherine's phone to the Naperville Police Department Computer Crimes Lab, requesting that all communication between Catherine and Grif be extracted. After the extraction occurred, Catherine's phone was returned to Gibler at 9 PM. A digital report and copy of the exam were submitted into evidence on February 9, 2023.

71. On February 9, 2023, Catherine sent a text to her adult son, C.L. with a picture of the guns and stated that she had spoken to the person at the gun store about the potential sale of the guns. During this conversation, C.L. sent a text to Catherine, giving her the first four numbers of the safe code and Catherine responded with the last three numbers, clearly establishing that she had always known the combination to the gun safe and that the combination code was created by Catherine.

72. On or around February 9, 2023, Liberio asked Catherine for written consent to allow law enforcement officers to enter the home and retrieve the guns. Catherine signed this consent form.

73. On February 10, 2023, the Illinois State Police under the directive of the DuPage County's State's Attorney Investigators and the Naperville Police Department, denied Grif's FOID Card application.

74. On February 14, 2023, Deputy Chief Bissegger contacted the State Attorney's Investigator's office and requested assistance on Grif and Catherine's case.

75. On February 14, 2023, under the direction of Liberio, Investigator Klebba drafted a report about Grif which claimed: (a) Grif had several firearms in the home, (b) Grif was the sole possessor of the gun safe's combination, and (c) Grif was the only individual residing at the shared residence.

76. On February 15, 2023, Klebba authored a pen register stating that a warrant had been issued for Grif, a Caucasian male born December 6, 1985. The warrant was dated December 12, 2022, and entered by Judge Jennifer Martin. This warrant did not include a case number or a bond amount.

77. Klebba claimed that Grif was an armed and dangerous fugitive.

78. Klebba stated that Catherine did not have access to the gun safe until February 9, 2023, and that Catherine guessed the seven digit code.

79. On February 16, 2023, the DuPage County State's Attorney's Office approved Klebba's search warrant application for Grif's telecommunications records for the next sixty (60) days and the telephone records from November 1, 2022 through the date of the order. In the application, Klebba claims Grif "is wanted (armed/dangerous) for Harassment By Telephone"

80. On information and belief, with a directive from the DuPage County State's Attorneys ("DCSA"), their Investigators Liberio, Klebba, Zdan and Keating along with Gibler, Arres and Bissegger accepted Catherine's fabricated theory that Grif had access to the gun safe without having a valid FOID card. Each and every one of the above individuals all ignored ample exculpatory evidence showing that Grif did not have access to the gun safe and could not have committed the felony.

81. On February 17, 2023, Grif was apprehended after being stopped by a DuPage County Deputy squad car. The arrest was supported by various unmarked vehicles and nearly a dozen SWAT team members from the Illinois State Police, all of them equipped with ballistic shields and longs guns.

82. Grif was charged with nineteen (19) counts of Unlawful Violation of the Firearm Owner's Identification Card Act under 430 ILCS 65/2(a)(2) and 430 ILCS 65/14(c)(1). The information

alleged that Grif was personally in possession of nineteen (19) firearms when he did not have a valid FOID card.

83. Liberio, Black, Keating, Klebba and Zdan were all present at the scene when the arrest occurred.

84. Under Liberio's direction, Keating authored a document to the Illinois State Police that Grif is a clear and present danger: "Clear and Present Danger requests shall be used by the Illinois State Police to identify persons who, if granted access to a firearm or ammunition, pose an actual, imminent threat of substantial bodily harm to themselves or others that is articulable and significant, or who will likely act in a manner dangerous to public safety." Liberio cited that Grif has been "growing aggressive" towards Catherine in the recent months. Liberio includes that Grif has been living in the shared residence alone for the past six weeks.

85. Grif's bond hearing occurred on February 17, 2023, at 4:30PM.

86. During the hearing, an assistant States Attorney from the DuPage County State's Attorney Office (ASA), based upon information that she had received from investigators, claimed that Grif had discharged a firearm during his mental health crisis in December of 2017 which was untrue.

87. The Assistant States Attorney (ASA) claimed that the investigators were securing warrants for firearm possession.

88. Klebba delayed submitting the Firearms Criminal Complaint to DuPage County Jail even though it was completed by 2:30PM. This postponement resulted in the complaint not being delivered until after the scheduled bond hearing; therefore, Grif had to be held in custody over-night.

89. On February 18, 2023, Grif was present at a bond hearing, where the ASA again claimed that Grif had discharged a firearm in December 2017 within his residence.

90.   On February 21, 2023, Klebba and Liberio presented themselves to Grif's parents' residence to question Grif's father, Robert Lippencott ("Robert").   After speaking with Robert, Klebba authored a report that omitted critical excerpts from Robert's interview. After reviewing the report, Klebba removed Robert's statements that Catherine has been charged with burglary and forgery and is a habitual liar.

91.   On March 9, 2023, the ASA and Zdan participated in grand jury proceedings.

92.   During the proceedings, Zdan testified that Grif had "secured firearms within a safe and modified the combination to limit access exclusively to himself."  Zdan knew this statement to be untrue.

93.   On March 2, 2023, the court ordered discovery.

94.   On March 17, 2023, Grif was terminated from employment with *MSA Security.* The termination letter cited Grif's alleged illegal possession of firearms.

95.   At the time of his arrest, Grif was in the hiring process for a Regional Canine Handler position at the Milwaukee Airport for the TSA. This job offer was rescinded upon learning of Grif's arrest.

96.   On May 2, 2023, the ASA assigned to the case informs the court that discovery is complete; however, it had not been turned over to Grif.

97. On May 31, 2023, Klebba interviewed Catherine, where Catherine admitted: (a) to never observing Grif in possession of weapons and (b) that Grif did not access to the gun safe. Specifically, the critical report stated,

> "…Kate asked about how Grif was going to be prosecuted for the guns found in the safe, when she never saw him with the guns.   I told Kate that that my understanding was that Grif was the only person with the combination to the safe, and C.L. got into the safe by her having C.L. try a password that Grif used in the past being a combination of his employee ID and badge number from Naperville Police.   This

information Kate gave to Deputy Chief Liberio, Inv. Black, Amanda Grey, Monica DeSanto and Gianna Trembino on February 15, 2023. **Kate said that was not true and the number was an old telephone number that she used when she grew up."**

98. While Klebba and each of the Defendants had known all along that the allegations about Grif changing the safe code were false, by May 31, 2023, everyone involved in the prosecution of Grif knew that that the entire investigation about Grif unlawfully possessing nineteen (19) weapons, was a witch-hunt.

99. On June 9, 2023, Klebba reviews Catherine's the evidence extracted from cell phone on February 8, 2023.

100. After further discovery was ordered by the court on June 4, 2024, the State Attorney's Office produced the exculpatory discovery, which it has been withholding for over 18 months. The trial of Grif on the gun charges was scheduled on August 8, 2024.

101. On July 29, 2024, the State Attorney's Office stated in open court stated that "after a thorough review of the facts, they cannot proceed with the weapons possession case." All nineteen weapon possession charges are nolle prosequi per agreement (2023 CF 00035-0020).

## COUNT I

### FEDERAL FALSE ARREST REGARDING FEBRUARY 17, 2023 ARREST AGAINST DEFENDANTS LIBERIO, KLEBBA, ZDAN, KEATING, GIBLER, AND BISSEGGER

Plaintiff hereby incorporates, in their entirety, Paragraphs One (1) through One Hundred One (101) of Grif's Complaint and by reference makes said paragraphs a part hereof as if fully set forth herein.

102. Defendants Liberio, Klebba, Zdan, Keating, Gibler, and Bissegger committed actions and/or omissions under the color of law and by virtue of their authority as law enforcement officers. Defendants Liberio, Klebba, Zdan, Keating, Gibler, and Bissegger substantially deprived Grif of

14

his rights clearly established and guaranteed to him by the United States Constitution. Therefore, violating Plaintiff's 4th Amendment right to be free from unlawful search and seize, and to be free from and 42 U.S.C. § 1983.

103.  Defendants Liberio, Klebba, Zdan, Keating, Gibler, and Bissegger either arrested Grif or participated in or directed his arrest.

104.  Defendants Liberio, Klebba, Zdan, Keating, Gibler, and Bissegger lacked probable cause to arrest Grif.

105.  As a direct and proximate result of the acts and omissions of Defendants Liberio, Klebba, Zdan, Keating, Gibler, and Bissegger in effectuating Grif's unlawful arrest, Grif's constitutional rights were violated and Grif sustained substantial injuries.

## COUNT II

### FEDERAL FIRST AMENDMENT RETALIATION REGARDING FEBRUARY 17, 2023 ARREST AGAINST DEFENDANTS LIBERIO, KLEBBA, ZDAN, KEATING, GIBLER, AND BISSEGGER

Plaintiff hereby incorporates, in their entirety, Paragraphs One (1) through One Hundred Five (105) of Grif's Complaint and by reference makes said paragraphs a part hereof as if fully set forth herein.

106.  Defendants Liberio, Klebba, Zdan, Keating, Gibler, and Bissegger committed the above-described actions and/or omissions under the color of law and by virtue of their authority as law enforcement officers. They substantially deprived Grif of his clearly established rights, privileges, and immunities, guaranteed to him by the United States Constitution and in violation of 42 U.S.C. § 1983, and deprived Grif of rights guaranteed to him under the First Amendment to the United States Constitution.

107. Grif expressing opinions about the Naperville Police Department, which were formed while and after his employment, were a motivating factor in the decision of Defendants Liberio, Klebba, Zdan, Keating, Gibler, and Bissegger to arrest Grif on February 17, 2023.

108. The arrest of Grif was retaliatory in nature and emanated from Defendants Liberio's, Klebba's, Zdan's, Keating's, Gibler's, and Bissegger's response to Grif claiming his complete innocence under the First Amendment to the Constitution.

109. Defendants Liberio, Klebba, Zdan, Keating, Gibler, and Bissegger lacked probable cause to arrest Grif.

110. As a direct and proximate result of the retaliatory acts of Defendants Liberio, Klebba, Zdan, Keating, Gibler, and Bissegger in effectuating Grif's unlawful arrest, Grif's constitutional rights were violated and Grif sustained substantial injuries.

## **COUNT III**

### **FEDERAL UNLAWFUL PRETRIAL DETENETION AGAINST DEFENDANTS LIBERIO, KLEBBA, ZDAN, KEATING, GIBLER, AND BISSEGGER**

Plaintiff hereby incorporates, in their entirety, Paragraphs One (1) through One Hundred Ten (110) of Grif's Complaint and by reference makes said paragraphs a part hereof as if fully set forth herein.

111. Defendants Liberio, Klebba, Zdan, Keating, Gibler, and Bissegger committed the above-described actions and/or omissions under the color of law and by virtue of their authority as a law enforcement officer. They substantially deprived Grif of his clearly established rights, privileges, and immunities, guaranteed to him by the United States Constitution and in violation of 42 U.S.C. § 1983, and deprived Grif of rights guaranteed to him under the Fourth Amendment to the United States Constitution to be free from unlawful search and seizure and to be free from unlawful arrest and seizure of his person.

112. Defendants Liberio, Klebba, Zdan, Keating, Gibler, and Bissegger caused Grif to be seized and detained.

113. Defendants Liberio, Klebba, Zdan, Keating, Gibler, and Bissegger caused Grif to be seized and detained with malice and to embarrass Grif, even though they lacked probable cause to seize and detain Grif.

114. As a direct and proximate result of the acts and omissions of Defendants Liberio, Klebba, Zdan, Keating, Gibler, and Bissegger, in effectuating Grif's unlawful seizure and detention, Grif's constitutional rights were violated and Grif sustained substantial injuries.

<u>**COUNT IV**</u>

**FEDERAL DUE PROCESS CLAIM**
**AGAINST DEFENDANT GIBLER AND BISSEGGER**

Plaintiff hereby incorporates, in their entirety, Paragraphs One (1) through One Hundred Fourteen (114) of Grif's Complaint and by reference makes said paragraphs a part hereof as if fully set forth herein.

115. Defendants Gibler and Bissegger committed the above-described actions and/or omissions under the color of law and by virtue of their authority as a law enforcement officer. They substantially deprived Grif of his clearly established rights, privileges, and immunities, guaranteed to him by the United States Constitution and in violation of 42 U.S.C. § 1983, and deprived Grif of rights guaranteed to him under the Due Process Clause of the Fourteenth Amendment.

116. Defendants Gibler and Bissegger made false statements, including falsely stating that Grif did not have a valid FOID card and had access to the gun safe within the formerly shared residence.

117. Defendants Gibler and Bissegger included these fabricated statements in police reports and documents filed with the court.

118. Defendants Gibler's and Bissegger's false statements resulted in Grif's arrest.

119. As a result of the fabricated statements, Grif was deprived of his liberty.

120. Absent the fabricated statements, Grif would not have suffered the deprivation of liberty.

121. As a direct and proximate result of the acts and omissions of Defendants Gibler, and Bissegger, Grif's constitutional rights were violated and Grif sustained substantial injuries.

## COUNT V

### STATE LAW TORTS AGAINST DEFENDANTS LIBERIO, KLEBBA, ZDAN, KEATING, GIBLER, ARRES, BISSEGGER, AND CATHERINE LIPPENCOTT

Plaintiff hereby incorporates, in their entirety, Paragraphs One (1) through One Hundred Twenty-One (121) of Grif's Complaint and by reference makes said paragraphs a part hereof as if fully set forth herein.

122. The acts, omissions and conduct of Defendants Liberio, Klebba, Zdan, Keating, Gibler, Bissegger, and Catherine Lippencott constitute false arrest, false imprisonment, malicious prosecution, conspiracy, negligent infliction of emotional distress, and intentional infliction of emotional distress under Illinois law.

123. As a direct and proximate result of the aforementioned acts and omissions of Defendants, Grif has been injured and damaged.

## COUNT VI

### AGAINST COUNTY OF DUPAGE AND THE CITY OF NAPERVILLE FOR INDEMINIFICATION

Plaintiff hereby incorporates, in their entirety, Paragraphs One (1) through One Hundred Twenty-Three (123) of Grif's Complaint and by reference makes said paragraphs a part hereof as if fully set forth herein.

124.  Pursuant to 745 ILCS 10/9-102, 55 ILCS 5/4-6003, and/or 55 ILCS 5/5-1106, County of DuPage is empowered and directed to pay any judgment for compensatory damages (and any associated attorneys' fees and costs) assessed against its employees or an independently elected DuPage County officer, such as the DuPage County Sheriff and its deputies, including Defendants Liberio, Klebba, Zdan, and Keating, when such persons are liable for conduct within the scope of their employment.

125.  Pursuant to 745 ILCS 10/9-102, 55 ILCS 5/4-6003, and/or 55 ILCS 5/5-1106, the City of Naperville is empowered and directed to pay any judgment for compensatory damages (and any associated attorneys' fees and costs) assessed against its employees, including Defendants Gibler and Bissegger when such person is liable for conduct within the scope of his employment.

126.  The acts and/or omissions of Defendants Liberio, Klebba, Zdan, Keating, Gibler and Bissegger described in this Complaint were committed in the scope of their employment.

127.  In the event that a judgment for compensatory damages is entered against Defendants Liberio, Klebba, Zdan, Keating, County of DuPage should be held liable to pay the judgment as well as the associated attorneys' fees and costs.

128.  In the event that a judgment for compensatory damages is entered against Defendants Gibler and Bissegger, the City of Naperville should be held liable to pay the judgment as well as the associated attorneys' fees and costs.

## COUNT VII

### PUNITIVE DAMAGES AGAINST DEFENDANTS LIBERIO, KLEBBA, ZDAN, KEATING, GIBLER, BISSEGGER AND CATHERINE LIPPENCOTT

Plaintiff hereby incorporates, in their entirety, Paragraphs One (1) through One Hundred Twenty-Eight (128) of Grif's Complaint and by reference makes said paragraphs a part hereof as if fully set forth herein.

129. The actions and/or omissions of Defendants Liberio, Klebba, Zdan, Keating, Gibler, Bissegger and Catherine Lippencott were unlawful, conscience shocking, and unconstitutional, and performed maliciously, recklessly, fraudulently, intentionally, willfully, wantonly, in bad faith, and in such a manner to entitle Grif to a substantial award of punitive damages against Defendants.

## **DAMAGES**

Plaintiff hereby incorporates, in their entirety, Paragraphs One (1) to One hundred Twenty-Nine (129) of Grif's Complaint and by reference makes said paragraphs a part hereof as if fully set forth herein.

As direct and proximate result of the aforementioned actions and omissions of the Defendants, Plaintiff was injured and damaged. The damages for which Plaintiff seeks compensation from the defendants, both jointly and severally, include, but are not limited to, the following:

a. emotional pain and suffering of a past, present, future nature;

b. the physical pain and suffering of a past, present, and future nature;

c. loss of enjoyment of life of a past, present, and future nature;

d. fright, fear aggravation, humiliation, anxiety, and emotional distress of a past, present, and future nature as a result of the injuries sustained as a result of the illegal actions of Defendants;

e. loss of earning capacity;

f. attorney's fees pursuant to 42 U.S.C. § 1988;

g. punitive damages against applicable defendants;

h. pre-and post-judgment interest;

i. preclusion of Defendants from serving as police officers;

j.  all such relief, both general and specific, to which Grif may be entitled to under the premises.

## **PRAYERS FOR RELIEF**

Plaintiff hereby incorporates, in their entirety, each and every paragraph of this Complaint and by reference makes said paragraphs a part hereof as if fully set forth herein.

WHEREFORE, PREMISES CONSIDERED, Grif sues the Defendants both jointly and severally, his personal injuries and prays for a judgment against the Defendants for compensatory damages solely in an amount to be determined by a jury as reasonable and for all such further relief, both general and specific, to which he may be entitled under the premises.

WHEREFORE, PREMISES CONSIDERED, Grif sues Defendants Liberio, Klebba, Zdan, Keating, Gibler, Bissegger, Catherine Lippencott, the County of DuPage and the City of Naperville in an amount solely to be determined by a jury as reasonable and for all such further relief, both general and specific, to which he may be entitled under the premises.

A JURY IS RESPECTFULLY DEMANDED TO TRY THE ISSUES ONCE JOINED.

DATED: February 14, 2025

Respectfully submitted,
Grif Lippencott


By: */s/ Donald J. Angelini, Jr.*
One of his attorneys

Donald J. Angelini, Jr.
Angelini & DiLeo, P.C.
ARDC No. 6194334
2215 York Road, Suite 550
Oak Brook, Illinois   60523
P: (312) 900 0100
donald@angelinidileo.com

**CERTIFICATE OF SERVICE**